## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TANYA COOPER and JOSEPH ROSE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANHEUSER-BUSCH, LLC,<br><br>Defendant. | Civil Action No.: 7:20-cv-07451<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Tanya Cooper and Joseph Rose ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint against Defendant Anheuser-Busch, LLC ("AB" or "Defendant"). Plaintiffs make the following allegations upon personal knowledge as to their own acts and experiences, and upon information and belief and the investigation of counsel as to all other matters.

### INTRODUCTION

1.      This is a consumer protection class action arising out of Defendant's false and misleading advertising of its Ritas™ Margarita, Mojito, Rosé, and Sangria beverages sold in enclosed packages (the "Products").

2.      During the relevant class period, Defendant, directly and/or through its agents, has manufactured, packaged, and sold the Products. The Products are sold through third party retailers such as Walmart, grocery stores, and convenience and liquor stores.

3.      During the relevant class period, Defendant has manufactured and sold beverages it conspicuously packages as a "SPARKLING MARGARITA" (the "Margarita Products"). Based on this representation, reasonable consumers of the Margarita Products believe that the they

contain tequila. However, unbeknownst to those consumers, the Margarita Products do not contain tequila.

4.     During the relevant class period, Defendant has manufactured and sold beverages it conspicuously packages as a "ROSÉ" or "SANGRIA" (the "Wine Products"). Based on these representations, reasonable consumers of the Wine Products expect that they contain wine. However, unbeknownst to those consumers, the Wine Products do not contain wine.

5.     During the relevant class period, Defendant has manufactured and sold beverages it conspicuously packages as a "MOJITO" and "SPARKLING CLASSIC COCKTAILS" (the "Mojito Products"). Based on these representations, reasonable consumers of the Mojito Products expect that they contain rum. However, unbeknownst to those consumers, the Mojito Products do not contain rum.

6.     Defendant's packaging of the Products is therefore false and misleading.

7.     As a result of Defendant's false and deceptive packaging, Plaintiffs and other members of the proposed Class (the "Class" as defined below) have purchased Products they otherwise would not have purchased or have paid more for the Products than they otherwise would have paid. Therefore, Plaintiffs and other members of the Class have been injured.

8.     Plaintiffs bring this action on behalf of themselves and all others similarly situated to halt the dissemination of Defendant's false, misleading and deceptive packaging and advertising, to correct the inaccurate perception it has created in the minds of consumers, and obtain monetary redress for those who have purchased Defendant's Products.

## JURISDICTION AND VENUE

9.     The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, this is a

class action in which there are more than 100 Class members, and at least some Class members are citizens of states different from Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant intentionally avails itself of the markets in New York through the promotion, marketing, and sale of the Products in New York to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this District. Plaintiff Cooper resides, and made the purchases at issue, in this District.

## PARTIES

12.     Plaintiff Tanya Cooper is a citizen of the State of New York, and at all times relevant to this action, resided in Bedford Hills, New York. In or around December 2019, Ms. Cooper purchased the 12-pack Lime-A-Rita as well as the 12-pack Mojito Fizz variety pack from a Stop & Shop in Mount Kisco, New York. In purchasing the Margarita Product, Ms. Cooper saw and relied on the word "MARGARITA" on the front package of the Margarita Product and reasonably expected that it contained tequila. Ms. Cooper's belief was reinforced by the salted margarita glass displayed on the packaging. Moreover, nowhere on the packaging did Ms. Cooper see a disclaimer or any other statement indicating that the Margarita Product does not contain tequila, or that the product is just a flavored beer. Had Ms. Cooper known that the Margarita Product did not contain tequila, she would not have purchased it or would have paid significantly less for it. In purchasing the Mojito Product, Ms. Cooper saw and relied on the word "MOJITO" on the front package of the Mojito Product and reasonably expected that it contained rum. Moreover, nowhere on the packaging did Ms. Cooper see a disclaimer or any other statement

indicating that Mojito Product does not contain rum, or that Mojito Product is just a flavored beer. Had Ms. Cooper known that the Mojito Product did not contain rum, she would not have purchased it or would have paid significantly less for it. Therefore, as a direct result of Defendant's false and deceptive conduct, Ms. Cooper suffered injury-in-fact and lost money.

13.     Plaintiff Joseph Rose is a citizen of the State of New York, and at all times relevant to this action, resided in Brooklyn, New York. In or around July 2020, Mr. Rose purchased the 12-pack Lime-A-Rita and a 12-pack Ritas Spritz Variety Pack from a Rite-Aid in Brooklyn, New York. In purchasing the Margarita Product, Mr. Rose saw and relied on the word "MARGARITA" on the front package of the Margarita Product and reasonably expected that it contained tequila. Mr. Rose's belief was reinforced by the salted margarita glass displayed on the packaging. Moreover, nowhere on the packaging did Mr. Rose see a disclaimer or any other statement indicating that the Margarita Product does not contain tequila, or that the Margarita Product is just a flavored beer. Had Mr. Rose known that the Margarita Product did not contain tequila, he would not have purchased it or would have paid significantly less for it. In purchasing the Ritas Spritz Variety Pack, Mr. Rose saw and relied on the words "SANGRIA" and "ROSE" on the front package of the Wine Product and reasonably expected that the product would contain wine.  Mr. Rose's belief was reinforced by the word "SPRITZ," as well as the wine glasses, on the front packaging of the product. Moreover, nowhere on the packaging did Mr. Rose see a disclaimer or any other statement indicating that the Wine Product does not contain wine, or that the Wine Product is just a flavored beer. Had Mr. Rose known that the Wine Product did not contain wine, he would not have purchased it or would have paid significantly less for it.   Therefore, as a direct result of Defendant's false and deceptive conduct, Mr. Rose suffered injury-in-fact and lost money.

14.     Despite being misled by Defendant, Plaintiffs wish to and are likely to continue purchasing the Products in the future. Although Plaintiffs regularly purchase alcoholic beverages, absent an injunction prohibiting the deceptive packaging and advertising described herein, they will be unable to rely with confidence on Defendant's packaging of the Products in the future and will therefore abstain from purchasing the Products, even though they would like to purchase them. Furthermore, while Plaintiffs currently believe the Products do not contain distilled liquors or wine, they lack personal knowledge as to Defendant's specific business practices, leaving doubt in their minds as to the possibility that at some point in the future the Products could contain distilled liquors or wine. This uncertainty, coupled with their desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the misleading representations alleged herein. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that they contain distilled liquors or wine when they do not. Thus, monetary damages alone are insufficient to remedy the harm in this action.

15.     Defendant Anheuser-Busch, LLC is a Delaware limited liability company headquartered in St. Louis, Missouri. Defendant, directly and/or through its agents, is responsible for the formulation, manufacturing, brewing, packaging, marketing, distributing, and sale of the Products nationwide, including in California.

## FACTUAL ALLEGATIONS

**A.      Defendant and the Products**

16.     Defendant is an American brewing company that owns brands such as Budweiser, Stella Artois, and Michelob Ultra.

17.     At issue in this action are Defendant's Ritas™ brand "Margarita," "Mojito," "Rosé," and "Sangria" beverages sold in enclosed packages (the "Products").[1]

18.     The Products are sold through third party retailers such as Walmart and Total Wine, as well as grocery stores and liquor stores.

**B.     The Margarita Products**

19.     During the relevant class period, Defendant has manufactured and sold beverages it conspicuously calls a "MARGARITA" on the packaging (the "Margarita Products"):[2]



---

[1] For purposes of clarity, this action does not challenge Ritas™ brand Margarita," "Mojito," "Rosé," and "Sangria" beverages sold in standalone cans (without enclosed packaging).

[2] The Margarita Products include but are not limited to: Lime-A-Rita, Straw-Ber-Rita, Peach-A-Rita, Water-Melon-Rita, Berry-A-Rita, Mang-O-Rita, Lemon-Ade-Rita, Guav-A-Rita, Pome-Granate-Rita, Grape-A-Rita, Party with Ritas Variety Pack, and all other Ritas™ brand beverages sold in enclosed packages bearing the word "Margarita".

20.     It is common knowledge, and indeed definitional, that a margarita contains tequila. When consumers order margaritas at bars or other establishments selling alcoholic beverages, they reasonably expect to receive a cocktail containing tequila.

21.     The Merriam-Webster dictionary defines a "margarita" as "a cocktail consisting of *tequila*, lime or lemon juice, and an orange-flavored liqueur."[3] Wikipedia, an online encyclopedia, also defines a "margarita" as "a cocktail consisting of *tequila*, orange liqueur, and lime juice[.]"[4]

22.     Moreover, the International Bartenders Association ("IBA"), the world's largest bartender association and host of annual cocktail competitions, recognizes a "margarita" as a classic cocktail made with tequila.[5]

23.     In other words, reasonable consumers of the Margarita Products expect that based on the word "MARGARITA" on the package of the Margarita Products the products would contain tequila. This belief is further reinforced by the image of a salted margarita glass on the packaging.

24.     However, unbeknownst to those consumers, the Margarita Products do not contain tequila.

25.     Moreover, nowhere on the front, sides, or top panel of the packaging (the consumer facing panels) does Defendant state that the Margarita Products do not have tequila, or that the Margarita Products are actually just flavored beers that taste like a margarita. Instead, the ***bottom*** panel of the packaging, where no reasonable consumer would look prior to purchase, contains a small font statement that the Margarita Products are actually "Malt Beverage[s] With Natural Flavors and Caramel Color". In any event, to the extent seen on the underside packaging, reasonable consumers are unlikely to understand the foregoing "malt beverage" statement as

---

[3] https://www.merriam-webster.com/dictionary/margarita (emphasis added).

[4] https://en.wikipedia.org/wiki/Margarita (emphasis added).

[5] https://iba-world.com/cocktails/margarita/

meaning that the Margarita Products do not contain tequila, particularly in the context of the other prominent, false and deceptive statements on the front packaging indicating that the products do contain tequila. As a result of the foregoing, no reasonable consumer would expect that the Margarita Products do not contain tequila.

26.     Defendant's packaging of the Margarita Products is therefore false and misleading.

**C.     The Wine Products**

27.     During the relevant class period, Defendant has manufactured and sold beverages it conspicuously calls a "ROSÉ" or "SANGRIA" "SPRITZ" on the packaging (the "Wine Products"):



28.     It is common knowledge, and indeed definitional, that Rosé is a type of wine and that Sangrias contain wine. When consumers order Rosé or a Sangria at bars or other establishments selling

alcoholic beverages, they reasonable expect to receive wine or a wine-based beverage.

29.     Indeed, the Merriam-Webster dictionary defines "Rosé" as "a light pink table wine made from red grapes by removing the skins after fermentation has begun"[6] and defines "Sangria" as "a usually iced punch typically made of red wine, fruit or fruit juice, and soda water."[7]

30.     Moreover, the term "Spritz" is well known as a wine-based cocktail.

31.     Thus, reasonable consumers of the Wine Products expect that based on the words "ROSÉ" and "SANGRIA" on the package of the Wine Products, the products would contain wine. This belief is further reinforced by the images of wine glasses on the packaging.

32.     In addition, Defendant goes to great lengths to give consumers the false impression that the Wine Products contain wine. For example, in one commercial for the Wine Products,[8] called "Subtle Notes," a woman is seen standing in front of a wine cellar, holding a wine glass filled with one of the Ritas™ Spritz products. The commercial starts with the woman saying, "Welcome to a tasting of new Ritas Spritz". The woman continues to provide the audience with the different "tasting notes" for the product. Tasting notes are most commonly associated with wine.

33.     However, unbeknownst to those consumers, the Wine Products do not contain any wine.

---

[6] https://www.merriam-webster.com/dictionary/ros%C3%A9

[7] https://www.merriam-webster.com/dictionary/sangria

[8] https://www.ispot.tv/ad/IPtP/ritas-spritz-subtle-notes



RITAS Spritz TV Commercial, 'Subtle Notes'

34.    Moreover, nowhere on the front, sides, or top panel of the packaging (the consumer facing panels) does Defendant state that the Wine Products do not have wine, or that the Wine Products are actually just flavored beers that taste like wine. Instead, the ***bottom*** panel of the packaging, where no reasonable consumer would look prior to purchase, contains a small font statement that the Wine Products are actually "Flavored Malt Beverage[s]". In any event, to the extent seen on the underside packaging, reasonable consumers are unlikely to understand the foregoing "malt beverage" statement as meaning that the Wine Products do not contain wine, particularly in the context of the other prominent, false and deceptive statements on the front packaging indicating that the products do contain wine. As a result of the foregoing, no reasonable consumer would expect that the Wine Products do not contain wine.

35.    Defendant's packaging and advertising of the Wine Products is therefore false and misleading.

10

**D.     The Mojito Products**

36.     During the relevant class period, Defendant has manufactured and sold beverages it conspicuously calls a "MOJITO" and "SPARKLING CLASSIC COCKTAIL" on the packaging (the "Mojito Products"):



37.     It is common knowledge, and indeed definitional, that a mojito contains rum. When consumers order mojitos at bars or other establishments selling alcoholic beverages, they reasonable expect to receive a cocktail containing rum.

38.     The Merriam-Webster dictionary defines a "mojito" as "a cocktail made of ***rum***, sugar, mint, lime juice, and soda water."[9]

---

[9] https://www.merriam-webster.com/dictionary/mojito?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (emphasis added).

11

39. Moreover, the IBA recognizes a "mojito" as a classic cocktail made with rum.[10]

40. Thus, reasonable consumers of the Mojito Products expect that based on the word "MOJITO" and "SPARKLING CLASSIC COCKTAILS" on the package of the Mojito Products, the products would contain rum.

41. However, unbeknownst to those consumers, the Mojito Products do not contain rum.

42. Moreover, nowhere on the front, sides, or top panel of the packaging (the consumer facing panels) does Defendant state that the Mojito Products do not have rum, or that the Mojito Products are actually just flavored beers that taste like a mojito. Instead, the ***bottom*** panel of the packaging, where no reasonable consumer would look prior to purchase, contains a small font statement that the Mojito Products are actually malt beverages. In any event, to the extent seen on the underside packaging, reasonable consumers are unlikely to understand the foregoing "malt beverage" statement as meaning that the Mojito Products do not contain rum, particularly in the context of the other prominent, false and deceptive statements on the front packaging indicating that the products do contain rum. As a result of the foregoing, no reasonable consumer would expect that the Mojito Products do not contain rum.

43. Defendant's packaging of the Mojito Products is therefore false and misleading.

**E. Competitor Brands Sell "Margaritas" That Contain Tequila**

44. Consumers' expectation that the Margarita Products contain tequila is even more reasonable given that competitor brands of the Margarita Products market and sell canned and other ready to go "Margarita" cocktails that do actually contain tequila.

---

[10] https://iba-world.com/cocktails/mojito/

45.     For example, the following competitor brands label or package their products as a "Margarita" and include tequila as an ingredient:









46.     The foregoing examples, which are among the many, demonstrate that the market and consumers have associated the cocktail name "margarita" with a beverage containing tequila. Thus, consumers reasonably expect that the Margarita Products, marketed as "Margarita" as well, will contain tequila as well.

**F.     Competitor Brands Sell "Mojitos" That Contain Rum**

47.     Consumers' expectation that the Mojito Products contain rum is even more reasonable given that competitor brands of the Mojito Products market and sell canned and other ready to go "Mojito" cocktails that do actually contain rum.

48.     For example, the following competitor brands label or package their products as a "Mojito" and include rum as an ingredient:





49.     The foregoing examples, which are among the many, demonstrate that the market and consumers have associated the cocktail name "mojito" with a beverage containing rum. Thus, consumers reasonably expect that the Mojito Products, marketed as "Mojito" as well, will contain rum as well.

**G.     Competitor Brands Sell "Sangrias" and "Rosé" That Contain Wine**

50.     Consumers' expectation that the Wine Products contain wine is even more reasonable given that competitor brands of the Wine Products market and sell canned and other ready to go "Sangria" and "Rosé" beverages that do actually contain wine.

51.     For example, the following competitor brands label or package their products as a "Sangria" or "Rosé" and contain wine:











52.     The foregoing examples, which are among the many, demonstrate that the market and consumers have associated the words "Sangria" and "Rosé" with wine. Thus, consumers reasonably expect that the Wine Products, marketed as "Sangria" or "Rosé" as well, will contain wine as well.

## H.     Plaintiffs and Class Members Were Deceived and Injured

53.     Plaintiffs and other Class members have been, and will continue to be, deceived or misled by Defendant's false and deceptive packaging of the Products.

54.     Plaintiffs and other Class members purchase, and pay a premium for, the Products based on the beverage names "Margarita," "Mojito," "Rosé," and/or "Sangria," reasonably believing that the Products will contain tequila, rum, or wine.

55.     Reasonable consumers did not know, and had no reason to know, that the Products were, and continue to be, falsely and deceptively packaged. Nowhere on the front, sides, or top panel of the packaging (the consumer facing panels) does Defendant state that the Products do not have distilled liquor or wine, or that the Products are actually just flavored beers that taste like margaritas, mojitos or wines. Instead, the ***bottom*** panel of the packaging, where no reasonable consumer would look prior to purchase, contains a small font statement indicating that the Products are malt beverages. Research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands.[11] In any event, as described above, even if consumers say the "malt beverage statements" on the underside panel, reasonable consumers are unlikely to understand the "malt beverage" statements as meaning that the Products do not contain tequila, rum, or wine, respectively, particularly in the

---

[11] Clement, J., *Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design*, 23 Journal of Marketing Management, 917−928 (2007).

context of the other prominent, false and deceptive statements on the consumer facing panels of the packaging.

56.     As a result of the foregoing, no reasonable consumer would expect that the Products would not contain distilled liquor and wine.

57.     The false belief created by Defendant's Products' packaging is a material factor in influencing consumer purchase decisions because it relates to the contents of the Products. To the detriment of consumers, Defendant's packaging entices consumers to pay for what they believe are beverages containing tequila, rum, or wine, when they do not.

58.     Had Plaintiffs and the Class members known the truth about the Products, they would not have purchased the Products and/or would not have paid the prices they paid for the Products.

59.     Plaintiffs and Class members were all harmed by purchasing Defendant's Products because they did not receive what they paid for, and, as a result, lost money and property.

60.     Each Class member has been exposed to the same or substantially similar deceptive practice, as each of the Margarita Products sold during the class period were called "Margarita," as each of the Mojito Products sold during the class period were called "Mojito," and as each of the Wine Products sold during the class period were called "Sangria" and/or "Rosé." Moreover, none of the Margarita Products sold during the class period contained tequila, none of the Mojito Products sold during the class period contained rum, and none of the Wine Products sold during the class period contained wine.

61.     Defendant has intentionally used commonly known cocktail and wine names on its packaging in order to induce Plaintiffs and other reasonable consumers to purchase and/or pay more for the Products than they otherwise would have. Defendant knew, or reasonably should have

known, that consumers would rely on the common cocktail and wine names on the packaging of the Products and reasonably believe the Products contained tequila, rum, or wine.

**I.      Defendant's Packaging Of The Margarita Products And Mojito Products Violates Federal Regulations**

62.      The packaging and advertising of flavored malt beverages, such as the Products here, is governed by 27 C.F.R. Part 7.

63.      27 C.F.R. 7.29 lists certain prohibited practices in regard to statements made on "containers" of all flavored malt beverages. 27 C.F.R. 7.29(a) states that "Containers of malt beverages, or any labels on such containers, or any carton, case, or individual covering of such containers, used for sale at retail, or any written, printed, graphic, or other material accompanying such containers to the consumer, must not contain: . . . (7) Any statement, design, device, or representation that tends to create a false or misleading impression that the malt beverage contains distilled spirits or is a distilled spirits product."

64.      While the same provision may permit "[t]he use of a cocktail name as a brand name or fanciful name of a malt beverage," it only does so if "the overall label does not present a misleading impression about the identity of the product." 27 C.F.R. 7.29(a)(7)(iii).

65.      The containers of the Margarita Products and Mojito Products violate 27 C.F.R. 7.29(a) because they contain statements, designs, and representations that create a false and misleading impression that the Products, which are malt beverages, contain certain distilled spirits. Namely, the word "MARGARITA" on the container of the Margarita Products, as well as the image of the salted margarita glass, are statements, designs and representations that create a misleading impression that the Margarita Products contain tequila. Moreover, the word "MOJITO" on the container of the Mojito Products is a statement and representation that creates a misleading impression that the Mojito Products contain rum.

66.     Moreover, while Defendant's use of the words "MARGARITA" or "MOJITO" may constitute a "use of a cocktail name as a brand name or fanciful name of a malt beverage" it is not permitted under the provision because the "overall label does [] present a misleading impression about the identity of the product." 27 C.F.R. 7.29(a)(7)(iii). Namely, nothing on the consumer facing panels of the packaging of the Products indicates that the Products do not contain distilled spirits or that the Products are simply just flavored beers which taste like distilled spirits. Instead, consumers reasonably only see the cocktail names and commonly associated images of them (margarita glass).

67.     As such, Defendant has violated 27 C.F.R. 7.29(a) in regard to the packaging of the Margarita Products and Mojito Products.

## J.     Regulatory Agencies Are Concerned About Misleading Cocktail Names Used On Malt Beverages

68.     Compliance Matters 97-1, issued by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), states that:

> ATF will continue not approving, as part of the fanciful name, the unmodified use of terms such as "Piña Colada", "Margarita", or "Sangria". Although these are not recognized as distinct class and types, *they are understood by the consumer to be distilled spirits or wine based products*. Flavored malt beverage products of this type must contain a margarita flavor, piña colada flavor, or sangria flavor and may only use these terms as a part of the fanciful name provided that the word "flavored" *clearly appears as a part of the fanciful name* (e.g., "Piña Colada Flavored Malt Beverage", "Margarita Flavored Malt Beverage", "Sangria Flavored Malt Beverage" etc.)

69.     On April 8, 2002, the ATF issued ATF Ruling 2002-2, a ruling which interprets the foregoing regulations in 27 C.F.R. 7 regarding the packaging and advertising of flavored malt beverages.[12] Of note, the ruling included the following observations and findings:

---

[12] https://www.ttb.gov/images/pdfs/rulings/2002-
2.htm#:~:text=ATF%20Ruling%202002%2D2&text=Purpose.,the%20provisions%20of%20ATF%20Rul.

a.   "ATF believes the association drawn between distilled spirits and malt beverages through the use of well-known distilled spirits brand names and terms on labels of flavored malt beverages causes confusion for consumers, the media, and State regulatory and taxing organizations. ATF believes this practice is confusing and leads consumers to believe distilled spirits are present in these flavored malt beverages." *Id.*

b.   "ATF believes that the depiction of a malt beverage product as a distilled spirits product, or the likening of a malt beverage to a distilled spirits product is misleading, and creates a misleading impression as to the identity of the malt beverage." *Id.*

### CLASS ACTION ALLEGATIONS

70.   Plaintiffs, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), bring this action on behalf all persons who purchased any of the Products in New York for personal, family, or household purposes, within the applicable statute-of-limitations period (the "New York Class" or "Class").

71.   Excluded from the New York Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors; all persons who make a timely election to be excluded from the New York Class; the judge to whom this case is assigned and any immediate family members thereof; and any persons who assert claims for personal injury.

72.   Plaintiffs reserve the right to modify or amend the definition of the proposed Class after having had an opportunity to conduct discovery.

73.   Plaintiffs are members of the New York Class.

74.     **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant has sold at least thousands of packages of the Products to Class members. There are likely at least thousands of Class members.

75.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether the representations discussed herein that Defendant made about the Products were or are false, misleading, or likely to deceive a reasonable consumer;

b.     Whether the representations discussed herein were material to a reasonable consumer;

c.     Whether Defendant's conduct violates public policy;

d.     Whether Defendant's conduct constitutes violations of the laws and/or regulations asserted herein;

e.     Whether Plaintiffs and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

f.     Whether Plaintiffs and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

76.     **Typicality.** Plaintiffs' claims are typical of those of the other Class members because, among other things, Plaintiffs and all Class members were injured in a similar manner through the uniform conduct by Defendant described herein.

77.     **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members Plaintiffs

seek to represent. In addition, Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Class, and the interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

78.    **Declaratory and Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

79.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**Violation of N.Y. Gen. Bus. Law § 349**
(***on behalf of the New York Class***)

80.    Plaintiffs re-allege and incorporate Paragraphs 1-79 as if fully set forth herein.

81.    Plaintiffs bring this claim individually and on behalf of the New York Class.

82.     New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . ." GBL § 349(a).

83.     The practices alleged herein – namely, deceiving consumers into believing that the Products contain distilled liquors or wine when they do not – are unfair, deceptive, and misleading, in violation of GBL § 349.

84.     The foregoing deceptive acts and practices were directed at Plaintiffs and other members of the New York Class.

85.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the content and ingredients of the Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchase decisions.

86.     Plaintiffs and members of the New York Class have been injured as a direct and proximate result of Defendant's violations described above as they would have paid significantly less for the Products had they known that they do not contain distilled liquors or wine.

87.     As a result of Defendant's unlawful action, Plaintiffs and members of the New York Class seek to enjoin Defendant's deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

### COUNT II
**Violation of N.Y. Gen. Bus. Law § 350**
**(*on behalf of the New York Class*)**

88.     Plaintiffs re-allege and incorporate Paragraphs 1-79 as if fully set forth herein.

89.     Plaintiffs bring this claim individually and on behalf of the New York Class.

90. GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

91. In turn, GBL § 350 defines false advertising as:

"advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

92. Defendant's actions are untrue and misleading through their deceptive packaging of the Products, which deceives consumers into believing that the Products contain distilled liquors or wine when they do not.

93. The foregoing misleading acts and practices were directed at Plaintiffs and members of the New York Class.

94. Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the content and ingredients of the Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchase decisions.

95. The foregoing misrepresentations have resulted in consumer injury or harm to the New York public.

96. Plaintiffs and members of the New York Class have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased the Products, or would have paid significantly less for them, had they known that the Products do not contain distilled liquors or wine.

97.     As a result of Defendant's unlawful action, Plaintiffs and members of the New York Class seek to enjoin Defendant's misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**COUNT III**
**Breach of Express Warranty**
**(*on behalf of the New York Class*)**

98.     Plaintiffs re-allege and incorporate Paragraphs 1-79 as if fully set forth herein.

99.     Plaintiffs bring this claim individually and on behalf of the New York Class.

100.    New York's express warranty statute provide that: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. Law § 2-313.

101.    Plaintiffs and members of New York Class formed a contract with Defendant at the time they purchased the Products. Defendant has expressly warranted on the packaging of the Products that each of the Margarita Products are "Margaritas," that the Mojito Products are "Mojitos," and that the Wine Products are "Sangria" or "Rosé." These representations: (1) are affirmations of fact or promises made by Defendant to consumers that the Products contain distilled liquors or wine; (2) became part of the basis of the bargain to purchase the Products when Plaintiffs and other class members relied on the representations; and (3) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the

basis of the bargain to purchase the Products, and which created express warranties that the Products would conform to the product descriptions.

102.    Plaintiffs and members of New York Class reasonably and justifiably relied on the foregoing express warranties, believing that Products did in fact conform to the warranties.

103.    All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and members of New York Class.

104.    Defendant has breached the express warranties made to Plaintiffs and members of New York Class by failing to provide products with distilled liquors or wine.

105.    Plaintiffs and members of New York Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs and members of New York Class had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them.

106.    As a result of Defendant's breach of express warranties, Plaintiffs and members of New York Class suffered injury and deserve to recover all damages afforded under the law.

107.    Within a reasonable amount of time after Plaintiffs discovered that Defendant did in fact breach the foregoing express warranties, Plaintiffs notified Defendant of the breach.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**(*on behalf of the New York Class*)**

108.    Plaintiffs re-allege and incorporate Paragraphs 1-79 as if fully set forth herein.

109.    Plaintiffs bring this claim individually and on behalf of the New York Class.

110.    New York's implied warranty law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. Law § 2-314.

111.    New York's implied warranty law also states that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. Law § 2-314(2)(f).

112.    Defendant is a merchant with respect to the sale of flavored malt beverages, including the Products at issue here. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to New York consumers.

113.    By advertising the Products with their current containers (packaging), Defendant made an implied promise that each Margarita Product was a "Margarita" and therefore contained tequila, that each Mojito Product was a "Mojito" and therefore contained rum, and that each Wine Product was a "Sangria" or "Rosé" and therefore contained wine. By brewing and selling the Products without any of the foregoing distilled liquors or wines, Defendant has not "conformed to the promises . . . made on the container" of the Products. Plaintiffs and members of the New York Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

114.    Therefore, the Products are not merchantable under New York law and Defendant has breached its implied warranty of merchantability in regard to the Products.

115.    If Plaintiffs and members of the New York Class had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiffs and members of the New York Class have suffered injury and deserve to recover all damages afforded under the law.

**COUNT V**
**Common Law Fraud**
***(on behalf of the New York Class)***

116.    Plaintiffs re-allege and incorporate Paragraphs 1-79 as if fully set forth herein.

117.    Plaintiffs bring this claim individually and on behalf of the New York Class.

118.     Defendant has willfully, falsely, and knowingly formulated and manufactured Products without distilled liquors or wine. Despite this, however, Defendant has intentionally represented that the Products are "Margaritas," "Mojitos," "Sangrias," or "Rosé." Therefore, Defendant has made intentional misrepresentations as to the Products.

119.     Defendant's misrepresentations are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition and ingredients of the Products.

120.     Defendant knew or recklessly disregarded the fact that the Products did not in fact contain distilled liquors or wine.

121.     Defendant intended that Plaintiffs and other consumers rely on the misleading representations, as the representations are made conspicuously on the front of the packaging of each of the Products.

122.     Plaintiffs and members of the New York Class have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

123.     Therefore, as a direct and proximate result of Defendant's fraud, Plaintiffs and members of the New York Class have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT VI**
**Unjust Enrichment/Quasi-Contract**
**(*on behalf of the New York Class*)**

124.     Plaintiffs re-allege and incorporate Paragraphs 1-79 as if fully set forth herein.

125.     Plaintiffs bring this claim individually and on behalf of the New York Class.

126.     At all times relevant hereto, Defendant deceptively marketed, advertised, and sold the Products to Plaintiffs and the New York Class members.

127.     Plaintiffs and members of the New York Class conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive packaging of the Products. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the New York Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the New York Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

128.     Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Products by Plaintiffs and members of the New York Class. Defendant's retention of that benefit under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that its Products possessed a characteristic that the Products did not, in fact, possess. Defendant's misrepresentations caused injuries to Plaintiffs and members of the New York Class because they paid a price premium due to the misleading advertising.

129.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the New York Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiffs and members of the New York Class for unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the proposed New York Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.      Certifying the New York Class as requested herein, designating Plaintiffs as class representatives and appointing the undersigned counsel as class counsel;

B.      Declaring that Defendant is financially responsible for notifying the New York Class members of the pendency of this suit;

C.      Ordering restitution and disgorgement of all profits and unjust enrichment Defendant obtained from Plaintiffs and the New York Class members as a result of Defendant's unlawful, unfair and fraudulent business practices;

D.      Ordering payment of damages as permitted by law, including actual, compensatory, statutory, and punitive damages, to the full extent permitted by law;

E.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the New York Class;

G.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

DATED: September 11, 2020          **FARUQI & FARUQI LLP**

By:  */s/ Innessa M. Huot*
      Innessa M. Huot (IH-1916)

685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
E-mail: ihuot@faruqilaw.com

**FARUQI & FARUQI LLP**
Timothy J. Peter (*pro hac vice forthcoming*)
1617 John F. Kennedy Boulevard, Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770
Fax: (215) 277-5771
E-mail: tpeter@faruqilaw.com

*Attorneys for Plaintiffs*